The final case on the argument calendar today is Paxfire v. Richman et al., number 182611. My name is Andrew Grosseau, and together with my co-counsel, Mr. Arnon Siegel, we represent Paxfire, Inc., in this appeal from an adverse judgment from the United States District Court for the Southern District of New York. This case actually arises from a convoluted collection of cases prior. It started with a class action filed in August 2011, which, unfortunately, the timing caused the failure of a sale of approximately $10 million of my client. Paxfire was in the process of being sold to Zerocola competitor. Paxfire counted with counterclaims. Unfortunately, the sale went under, the company went into bankruptcy, and the company eventually went out of business for all practical purposes except for litigating these cases. No proof of claim was filed by Ms. Feist. And that becomes very important, because later, when the case was — There would be no point in filing a proof of claim, right? Because there was — this was an unsecured debt, and the secured creditors would use up all the money. Your Honor, at the time that Paxfire went into bankruptcy, it was a reorganization, not a liquidation. There was an understanding between the parties, however, that the plaintiff could recover — now, the plaintiff in that case could recover up to the — any amount of — could use — could offset the counterclaims. I wouldn't call that an understanding. I would call that operation of law. It was expressly recognized by Ms. Feist and her attorneys that their claims were extinguished. And I would like to read from the record, specifically page — Extinguished except for the fact of the offset, you mean? Initially extinguished — and here's the language that Ms. Feist used in a joint letter to the Court that is quoted in one of Paxfire's motions regarding the setoff. It had to do with the dispute as to whether Paxfire could depose one of her attorneys, Mr. Richman. Regarding Paxfire's — I'm sorry. What page of the record are you at, please? 294. The quoted section near the bottom. Regarding Paxfire's intention to seek to depose Mr. Richman, Ms. Feist objects to that deposition as da-da-da-da-da. Ms. Feist's conversations with her attorney regarding her lawsuit, which Ms. Feist understands has since been extinguished by Paxfire's bankruptcy, are not relevant to Paxfire's defenses in the extinguished lawsuit, the basis for the extinguished lawsuit, or the defamation claims, et cetera. Now, that letter was dated March 11, 2015. The so-called agreement to a setoff was not until December of — actually, January of 2016. You say so-called agreement. It was an agreement. It was a concession. Wait. It's labeled a stipulation, isn't it? Yes. And signed by both parties. And there were undertakings by both parties. There were a number of different issues that were raised that were at issue — forgive me, Your Honor. There were a number of different issues up in the air at that point. And an examination of that stipulation shows that the — Ms. Feist simply conceded that particular point. Wait a second. It's called a stipulation and proposed order. It's signed by both parties, and it includes an undertaking by Paxfire to forego other damages related to counterclaims, among other things. It limits — Paxfire limits its requested damages. I don't see how this wasn't a compromise or settlement of some kind that severely undercuts your position that there was a favorable termination in other proceedings. Your Honor, the stipulation has a preamble. In the preamble, it says that Ms. Feist acknowledges that their — her claims are merely to be used as a set-off. Then there are a number of other issues that are addressed. But she had already conceded the point that her claims were extinguished, or essentially extinguished. And Paxfire — And your client was party to that stipulation, correct? Yes. So obviously, whatever she said earlier that you've quoted was itself waived by your client signing the stipulation. Because now there was a — now the claim was back in existence. Paxfire filed a motion on December 11th of 2015 asking that Ms. Feist's recovery be limited to the set-off. Her response is, for these reasons, Ms. Feist requests that the court — or that the damages related to Ms. Feist's August 2011 complaint are limited to set-off of her personal claims against Paxfire's counterclaims. Well, the claims are alive. They're alive, yeah. They're alive. They've been resurrected. It's like Phoenix rising from the ashes. But they were mooted by Pax — by her own failure to file a proof of claim and by Paxfire's claims themselves being ruled against in the motion for summary judgment. If the counterclaims had — instead of being dismissed, had been allowed to — if recovery was permitted, she then would have been able to — she would have gone forward to prove her offset. And Paxfire would have demonstrated at that point the meritless of her factual allegations. Oh. And under those circumstances, there would have been a disposition on the merits, and you could have shown a favorable termination if you'd won. But up to this point, up to that point, no favorable termination seems to me. Well, Your Honor, I think that what we have is that we have — we have her saying the following in her objection, that the court ordered that the damages related to her claims are limited. They are conceding the point, but they put everything — Conceding what? I mean — They're conceding that they have no — they can never get an affirmative recovery from Paxfire. They can't get damages because they can't — they can't get an affirmative recovery because the company's gone under. But they can get an offset, and that's something of value that they could litigate for. But they put themselves in this position. They did not have to do that. They could have filed a proof of claim and continued to litigate. They gave up not only a chance for an affirmative recovery, but their request for injunctive relief. And — What difference does that make? I mean, they were asserting their claim as a valuable claim, valuable at least in that it would reduce or eliminate any liability they might have to your client. That's not — that's not conceding that the claim has no value. That's not conceding that the claim is meritless. Again, I would refer the Court to the record, particularly on page 449. In footnote 4, it says, As a result of Paxfire's bankruptcy, dismissal of Paxfire's counterclaims render misviced claims moot. Thus, if the Court grants misviced motions, it need not reach a decision on Paxfire's motion. This completely ignores the fact that misviced had asked for injunctive relief. Mr. Gosar, you're going to have — you have a few more seconds left, but you'll have three minutes on rebuttal, and maybe that's when you'll be able to address further the injunctive relief. Okay? Okay. I will take my time. Thank you very much. We'll give you a little bit extra on your rebuttal. Sir. May it please the Court, I'm Doug Pepe from Joseph Haig Aronson for Millburg, and I'll be speaking today for the most part on behalf of all appellees. I direct your attention to A295. This is a brief that was submitted in the underlying litigation where Paxfire said, quote, put simply, misviced can no longer assert her claims seeking full damages. As we now explain, her claims remain. Misviced continued to prosecute her claims in this case from the first day of the case to the last day of the case. They point to, as basically their own — their only information, they point to the fact that misviced did not file a proof of claim in the bankruptcy. Well, we've put the list of creditors from the first day of the bankruptcy in the record, and there were 120 creditors, and Paxfire's assets exceeded its liabilities by over a million and a half dollars. Ultimately, that was borne out in the bankruptcy. There was no — there was a $250,000 payment to each of those creditors. Misviced continued to prosecute her claims from the beginning of the case to the end of the case, and there was no favorable termination in favor of Paxfire. Absent a favorable termination, there's no claim under New York law. This case should be dismissed. Thank you. Mr. Green. May it please the Court. I'm Anthony Green. I'm here on behalf of Appellee Reese, LLP. And I would echo the comments made by Millberg's counsel. And I'd like to also point out that this whole idea of having to file a notice of claim, this would be — or proof of claim, this would be starting a new lawsuit. And so they're proposing not only to force Misviced to begin a new lawsuit, but that it can establish a claim of — against attorneys who have no — no choice in whether she files a proof of claim or not and starts a second lawsuit. And I think that's — that's just not in keeping with — with the law on the issue. I have nothing else to say. Okay. Thank you. I think we have the argument. Mr. Gross, you have 3 minutes rebuttal, plus a little bit that I took from you. 3 plus 20. Oh, I'm sorry. I just had — I just had two people listed for argument here. If I wasn't put on the list, at least we have a little bit of time. I'm Matthew Press. A minute, yes. May it please the Court. I'm Matthew Press for the Richmond defendants, which include Betsy Feist, who is the named plaintiff in the underlying class action litigation. And I'm joining my colleagues in all of their arguments. I just want to state one thing from the point of view of Ms. Feist. She was a named plaintiff. As my colleagues have said, she never abandoned her affirmative claims. And I think that that's, you know, pivotal to the case. But just focusing in on the appellant's contention that a merely failing to pursue a claim in bankruptcy could satisfy the favorable termination element of a malicious prosecution claim, if that were the law — and I believe my colleague was beginning to say this — if that were the law, then any time a defendant declared bankruptcy, the plaintiff would be forced to pursue a proof of claim, even a non-economic claim, merely to defend themselves from a potential malicious prosecution by the estate of that debtor. That cannot be the law. And particularly in the case of a named plaintiff in a class action, this would be a terrible disincentive for anybody to do a public service and bring a claim in a class action lawsuit where not only could — they wouldn't be concerned merely about losing, but like Ms. Feist, being on the other end of an $80 million counterclaim. It's a preposterous contention of law. And Judge Stanton was correct in his ruling. And we respectfully request that the Court uphold the judge's ruling. Thank you. Thank you very much, Mr. Press. Okay. Now Mr. Grosso. Thank you, Your Honor. To answer those questions concerning the stipulation, I look at it that Ms. Feist converted her affirmative claims to something that was merely an affirmative defense. And one does not prevail on an affirmative claim by returning it to an affirmative defense. The stipulation, which is on page A435, has a series of introductory sections called whereas, whereas. One of the whereas's says, on January 4th, 2016, Ms. Feist filed a response in opposition to the motion stating in part that she has no objection to PACS fire's requested limitation on damages. Only then is there the stipulation. Under that is the caption, the stipulation, and it says it is hereby stipulated by and between the parties. That was not part of the stipulation. That was raised on a motion by PACS fire. It was conceded by Ms. Feist. And it was simply put into the stipulation to tell the magistrate judge that there was no dispute over this issue. With regard to the injunctive relief, we consider that very important. It's important because that was what the plaintiffs in the class action were supposedly seeking to stop PACS fire's business model. By abandoning the request for injunctive relief, which was still alive since PACS fire was obligated to help in the operation of the contracts after they were sold to their competitor, Zerocol. By abandoning that request for injunctive relief, they mooted and destroyed their entire case. They took away nothing after litigating with PACS fire for 5 years. They lost. And they lost in circumstances where it was quite clear they knew that they were going to lose. Their expert witnesses have retracted significant portions of their testimony or their questions. Leaving that aside, if they litigated the counterclaims and the counterclaims were alive, and then she had been able to establish that her offset was viable, nothing to do with any injunctions, then she would have prevailed. But there was a reason why they didn't submit the proof of claims. And it had to do with the ---- We've heard the reason. Well, no. It had to do with a lot of secured creditors and the liabilities exceeding the assets. There were ---- but the injunctive relief is still alive. Why did they not seek to make a ---- take a position that would have been law for everyone else who was in the same business? That maybe isn't fine. I mean, you could debate about that, but what does that have to do with a favorable termination? Well, that was ---- there were about 10 companies that were named in the preamble to the class action, yet only two companies were actually sued. One was RCN, one was Paxfire, but the other nine were named. And they could have stopped the other nine from using this technology. They didn't do it. They abandoned their claim, and they abandoned it because Ms. Weiss could not identify any search terms that she had entered that Paxfire could have picked up. She had signed a privacy policy that demonstrated that RCN and Paxfire could do what they did, and the experts retracted their positions. They could not win. Thank you. I will take the matter under advisement. That concludes our oral argument calendar today. The clerk will please adjourn to court. Court is adjourned. Court is adjourned. Court is adjourned.